UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

No 05-CV-1012 (JFB) (KAM)
_____

UNITED STATES UNDERWRITERS INSURANCE COMPANY,

Plaintiff,

VERSUS

UNITED PACIFIC ASSOCIATES, LLC,
JOSE SANDOVAL,
GJL DEVELOPMENT CO., LTD,
RELATING TO AN UNDERLYING ACTION IN THE SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF QUEENS ENTITLED SANDOVAL V. LIN, ET AL, INDEX. NO. 15439/04,

Defendants.

_____

MEMORANDUM AND ORDER
May 16, 2006
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff U.S. Underwriters Insurance Company ("U.S. Underwriters") brought this action, pursuant to this Court's diversity jurisdiction, against defendants United Pacific Associates, LLC ("UPA"), Jose Sandoval, and GJL Development Co., Ltd. ("GJL"), seeking a declaration that U.S. Underwriters is not obligated to defend or indemnify the defendants with respect to a personal injury suit brought by Sandoval in New York State court. The plaintiff moves for summary judgment. For the reasons stated below, the motion is denied.

I. BACKGROUND

The following facts are undisputed unless otherwise indicated. In an underlying state court action,[1] Sandoval alleges that, on January 24, 2004, he suffered injury as the

---

[1] The underlying action was filed in the Supreme Court for the State of New York, County of Queens, under the caption *Sandoval v. Lin, et al.*, Index. No. 15439/04.

result of a slip and fall on a sidewalk in front of 108-18 and 108-20 37th Avenue, in Corona, New York. (*See* Declaration of Mark Shockley ("Shockley Decl."), Ex. A, ¶¶ 26-28.) Specifically, Sandoval claims that his injury was caused by the negligent removal of snow and ice on the sidewalk.

At the time of the fall, UPA was building residences on the two plots, pursuant to a contract with the then owners of the property, GJL. (*Id.,* ¶ 23.) Under the contract, UPA was serving as a general contractor in relation to the construction of the residences. (*See* Shockley Decl., Ex. E.) The contract specifically indicated that UPA was required to perform tasks involving, *inter alia,* demolition and excavation, laying of foundation, floor framing, exterior brick work, roofing, installation of windows, balconies, doors, staircases, as well as plumbing, electrical, kitchen and bathroom work. (*See id.*) Robert Lin, one of the partners of UPA, testified that the company was formed for the sole purpose of constructing the two residences, and that the company performed general construction tasks in relation to the job. (*See* Shockley Decl., Ex. D, at 9-10.) Lin further testified that in January 2004, around the time of the accident, UPA employees would regularly remove snow from the front of the building so that they could access it to perform work on the interior. (*See id.,* at 65-66.) According to Lin, during that time period, construction on the main structures was completed, and UPA employees were painting and performing other "interior work." (*See id.,* at 46-47.)

At the time of Sandoval's accident, UPA was insured by a commercial liability policy issued by U.S. Underwriters. (*See* Shockley Decl., Ex. B.) The policy, number CL 3067314, contains a Classification Limitation Endorsement, which reads:

> Coverage under this contract is specifically limited to those classification codes listed in the policy. No coverage is provided for any classification code or operation performed by the Named Insured not specifically listed in the Declaration of the policy.

(*Id.*) Under a section entitled "Premium Computation," the policy specifically lists two classifications: "Carpentry," and "Carpentry-Interior." (*See id.*) Although no further definition of the terms appear within the policy itself, the classifications were accompanied by code numbers, "91342" for "Carpentry," and "91341" for "Carpentry–Interior." (*See id.*) These code numbers correspond with entries in the Insurance Services Office (ISO) Classification Table. (*See* Shockley Decl., Ex. C.)

On June 24, 2004, U.S. Underwriters received a New Loss report, notifying it of Sandoval's claim. (*See* Shockley Decl., Ex. F.) By July 7, 2004, U.S. Underwriters retained the services of a claim service to investigate the claim and prepare a report. (*See* Shockley Decl., Ex. G.) U.S. Underwriters received letters reporting on the status of the investigation on July 12, 2004 and August 23, 2004, and received a letter from UPA's counsel on July 27, 2004, which provided information regarding the accident. (*See* Shockley Decl., Exs. H, I, J.) On August 17, 2004, U.S. Underwriters disclaimed coverage, and filed the instant declaratory judgment action on February 24, 2005. (*See* Shockley Decl., Ex. K.)

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (stating that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[W]hen the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005)

### B. New York Insurance Law

"Under New York law, a court must give unambiguous provisions of insurance contracts their plain and ordinary meaning." *U.S. Underwriters Ins. Co. v. Congregation B'nai Israel*, 900 F. Supp. 641, 644 (E.D.N.Y. 1995), *aff'd* 101 F.3d 685 (2d Cir. 1996); *see also Hiraldo v. Allstate Ins. Co.,* 8 A.D.3d 230, 231, 778 N.Y.S.2d 50 (N.Y. App. Div. 2004). The language of a contract or an insurance policy is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of North America*, 46 N.Y.2d 351, 355 (N.Y. 1978). Although coverage is not to be afforded for liability for which insurance has not been purchased, *see Tartaglia v. Home Ins. Co.*, 240 A.D.2d 396, 397, 658 N.Y.S.2d 388 (N.Y. App. Div. 1997), ambiguous terms in an insurance policy are to be interpreted against the insurer and in favor of coverage for the insured. *See U.S. Fidelity & Guar. Co. v. Annunziata,* 67 N.Y.2d 229, 232 (N.Y. 1986); *see also Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 678 (N.Y. 1976). "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Inc. Village of Cedarhurst v. Hanover Ins. Co.,* 89 N.Y.2d 293, 298 (1996) (internal quotation omitted). Further, in order to avoid an obligation to defend an insured on the basis of a policy exclusion, an insurer must demonstrate that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies

3

in the particular case." *Id.*

### III. DISCUSSION

#### A. Sufficiency of Sandoval's Opposition

In its reply brief, U.S. Underwriters argues that summary judgment should be granted in its favor because the form of Sandoval's opposition is insufficient as a matter of law. Specifically, U.S. Underwriters highlights the fact that the opposition is only supported by the affirmation of an attorney, who has no personal knowledge as to the insurance policy or the facts relevant to this coverage dispute, as required by FED. R. CIV. P. 56.

Rule 56(e) establishes the forms of evidence that may be used in favor or opposition to a motion for summary judgment, specifically providing that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).

Although U.S. Underwriters is correct to point out the fact that Sandoval's opposition is supported by an affidavit offered by a party without personal knowledge of the facts underlying the legal dispute at hand, the Court finds that Sandoval's opposition is sufficient because it is supported by competent, admissible evidence. Specifically, Sandoval's memorandum of law opposing summary judgment relies on facts included within exhibits attached to the *plaintiff's* motion, which are properly attached to affidavits deriving from sources with personal knowledge. *Cf. Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (allowing party opposing motion for summary judgment to rely on statements included within exhibits submitted by moving party). Accordingly, the Court rejects U.S. Underwriters' argument that Sandoval's opposition is defective under Rule 56(e).

#### B. Classification Limitation

U.S. Underwriters argues that they are not obligated to defend or indemnify UPA because UPA was engaging in general contractor operations at the site, and not carpentry operations, in violation of the Classification Limitation Endorsement. U.S. Underwriters highlights the fact that a broader classification was available for general contracting, but UPA did not request or pay a higher premium for such a classification.

As stated previously, the policy at issue

4

only contains two classification codes–one for "Carpentry" and another for "Carpentry-Interior." No further definition of either of these terms exists within the four corners of the policy.

Although U.S. Underwriters notes evidence in the record which demonstrates that UPA was serving as a general contractor at the work sites, viewing the evidence in the light most favorable to defendants, there is a genuine issue of fact as to whether UPA was also directly performing operations that could be fairly characterized as carpentry tasks under the policy at the site at the time of the accident. First, Mr. Lin testified at his deposition that, at the time of the accident, UPA employees were working on the interior of the residences. (*See* Shockley Decl., Ex. D, at 46-47, 65-66.) Moreover, the contract between UPA and GJL listed interior tasks to be performed that a finder of fact could rationally conclude are related to carpentry, such as the installation of windows, doors, and staircases. (*See* Shockley Decl., Ex. E.)[2]

Given the fact that the policy did not provide a specific definition for either "Carpentry" or "Carpentry-interior," the terms are ambiguous enough to cover the tasks listed above. *See U.S. Underwriters Ins. Co. v. Falcon Const. Corp.,* 2004 WL 1497563, at *6-*7 (S.D.N.Y July 1, 2004) (holding that the otherwise undefined "Carpentry-Interior" classification could include interior mailbox work); *see also U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, Tzvi*, 2004 WL 2191051, at *8 (E.D.N.Y. Sept. 20, 2004) (rejecting summary judgment where the insurance company failed to show that the claim for indemnification "unambiguously" fell outside the classification at issue); *U.S. Underwriters Ins. Co. v. Falcon Const. Corp.,* 2003 WL 22019429, at *7 (S.D.N.Y. Aug. 27, 2003) (finding that insurance company was not entitled to a declaratory judgment that they were not required to indemnify defendant where the otherwise undefined "Carpentry-interior" classification could plausibly include doorway and floor renovation).[3]

---

[2] U.S. Underwriters argues that none of the tasks that UPA was to perform under their contract with GJL could reasonably be considered carpentry operations, by citing to a definition in the ISO classification tables for commercial lines. According to the ISO classification tables, "Carpentry-interior" includes "the installation of doors, floors, windows, cabinets, and hardwood or parquet flooring." (*See* Shockley Decl., Ex. C.) The Court rejects U.S. Underwriters' argument for a number of reasons. First, courts have not viewed the ISO classification tables as necessarily dispositive. For example, the Second Circuit has indicated that it is a common practice in the insurance field to use the "Carpentry-interior" classification for interior demolition, which is a task listed in the contract between UPA and GJL, and not listed in the ISO classification table. *See First Financial Ins. Co. v. Allstate Interior Demolition Corp.,* 193 F.3d 109, 117 (2d Cir. 1999). Moreover, assuming *arguendo* that the Court looks to the ISO classification tables for guidance, the tables characterize both window and door installation as activities which are considered within the "Carpentry-interior" classification, both of which were listed as tasks that UPA was to provide under their agreement with GJL. (*See* Shockley Decl., Exs. C, E.) Finally, even if the limiting definition for "Carpentry-interior" favored the conclusion U.S. Underwriters argues for, there is no definition or limitation for the general "Carpentry" classification in the policy at hand or the ISO classification tables. Thus, the ISO classification tables do not alter the Court's conclusion as to the ambiguity in the policy in the instant case.

[3] The Court is not holding, as Sandoval appears to suggest, that classification codes without further definition are ambiguous *per se*, but rather finds

5

The cases cited and relied upon by U.S. Underwriters–*Ruiz v. State Wide Insulation and Const. Corp.,* 269 A.D.2d 518, 703 N.Y.S.2d 257 (N.Y. App. Div. 2000) and *Mount Vernon Fire Ins. Co v. Chios Const. Corp.*, 1996 WL 15668 (S.D.N.Y. Jan. 17, 1996)–are distinguishable because, in both cases, the injury-causing activity did not bear a reasonable relationship to the classification for which coverage was purchased. In *Ruiz*, the policy at issue included a classification limitation for "painting," whereas the injured party was hurt while repairing a roof. *See* 269 A.D.2d at 519. In *Mount Vernon*, the policy at issue contained a classification limitation for "Carpentry-Interior," whereas the evidence unambiguously demonstrated that the injured party was an employee that only worked on steel beam cleaning, and that other employees were responsible for carpentry work. *See* 1996 WL 15668, at *2. By contrast, in the instant case, there is a genuine issue of fact as to whether the UPA employees were working on tasks that could fairly be characterized under the applicable classification limitations, as previously discussed.

---

that a classification code without further definition should be construed to cover activity which could arguably fall under the classification title. *Falcon,* 2003 WL 22019429, at *7 ("If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend.") (quoting *Incorporated Village of Cedarhurst,* 89 N.Y.2d at 298). A court should only grant summary judgment in favor of the insurer where the classification could not potentially be interpreted to cover the activity at issue. *See Falcon,* 2004 WL 1497563, at *7 (finding that it was plain that injuries resulting from interior mailbox work did not fall under the otherwise undefined classification "Plumbing-residential").

Finally, U.S Underwriters asserts that, even if UPA employees were working on carpentry operations on the date of the accident, the Court should find non-coverage as a matter of law because the accident was caused by allegedly negligent snow removal and not by carpentry operations. Sandoval responds by arguing that coverage existed because the snow and ice removal was necessary support to carpentry operations on that date to allow UPA employees to access the construction site. As a threshold matter, it should be noted that the insurance contract is silent as to whether activities which support classified operations are covered under the policy and, thus, it is ambiguous. Although there is not a wealth of authority regarding this issue, the Supreme Court of Alaska directly dealt with the question of whether activity supporting classified operations are covered under general commercial liability policies, where the insurance contract is otherwise silent, in *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599 (Alaska 2003). In *Great Divide*, the insured was a business which was classified as a "floor-covering installation" business, and the injuries arose from employees' efforts to cut down a tree to provide heat for the business. *See* 79 P.3d at 606-07. The Supreme Court of Alaska credited the trial court's finding that the contract was ambiguous as to this point, and held that activities which support classified operations are covered under this type of policy. *See id.* at 607.[4] The Court finds this analysis persuasive. Given the ambiguity in the contract and drawing all inferences in

---

[4] *Great Divide* distinguishes the two local cases relied upon by U.S. Underwriters, *Mt. Vernon* and *Ruiz*, because those two cases involved excluded operations that did not support classified operations, but rather constituted separate sources of revenue. *See Great Divide*, 79 P.3d at 606 n.7.

6

favor of defendants, there is a material issue of fact as to whether the removal of snow and ice on the date of the accident was in support of carpentry operations such that coverage was provided under the insurance contract at issue.[5]

In sum, there are material issues of fact as to whether: (1) UPA was engaged in carpentry operations at the site on the day of the accident within the meaning of the policy, and, if so, (2) whether the removal of snow on that date was in support of these carpentry operations such that it is covered by the terms of the policy.

IV. CONCLUSION

Accordingly, based on the disputed issues of material fact discussed above, the Court cannot conclude, as a matter of law, that U.S. Underwriters is not required to defend and indemnify the defendants in the underlying state court personal injury suit.[6]

Thus, the plaintiff's motion for summary judgment is DENIED.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: May 16, 2006
Brooklyn, New York

\* \* \*

The attorneys for the plaintiff are Miranda Sokoloff Sambursky, Esq., and Steven Verveniotis, Esq. of Slone Varveniotis LLP, The Esposito Building, 240 Mineola Boulevard, Mineola, New York 11501. The attorney for the defendant is Ian Asch, Esq. of Greenberg & Stein, Esqs., 275 Madison Avenue, Suite 1100, New York, New York 10016.

---

[5] Although the removal of snow to access a worksite is arguably no more attenuated than cutting down a tree to provide heat for a business, which was held to be a covered support activity in *Great Divide,* 79 P.3d at 607, the Court agrees with U.S. Underwriters that, at some point, a support activity may be too attenuated to support coverage. However, in the instant case, the Court finds there is a genuine issue of fact as to whether the removal of snow was sufficiently proximate to carpentry operations on the date of the accident, to be covered by the insurance contract.

[6] Since the Court concludes that summary judgment should be denied on this basis, the Court does not reach Sandoval's alternative argument that summary judgment should be denied based on allegedly untimely disclaimer of coverage by U.S. Underwriters. Sandoval did not make a cross-motion for summary judgment and conceded at oral argument that, viewing the facts in a light most favorable to U.S. Underwriters, they are not entitled to judgment as a matter of law based on untimely disclaimer.